IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DISABILITY RIGHTS CENTER OF
KANSAS, INC.

                    Plaintiff,


            vs.                                    Case No. 07-2333-JTM


MICHAEL LEAVITT, SECRETARY OF
THE UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES

                    Defendant.

MEMORANDUM AND ORDER

The plaintiff Disability Rights Center of Kansas, Inc. (hereinafter "DRC") brings this action

under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.*, seeking judicial review of a final

decision of defendant, United States Department of Health and Human Services (hereinafter "HHS").

(Dkt. No. 1).   The Department Appeals Board Appellate Division (hereinafter "DAB") affirmed

HHS's determination to disallow $355,997 in costs charged to program grants during the period of

October 1, 1995 through September 30, 2002.    DRC is requesting the court to hold unlawful and

set aside the disallowance by HHS for the following reasons: (1) the costs were approved by HHS;

(2) Robert Ochs, a lawyer and president of the board of directors of Kansas Advocacy Protective

Services, Inc. (hereinafter "KAPS"), DRC's corporate name during the relevant time period, was an

employee, not an independent contractor; (3) the costs do not violate Circular A-122 of the Office

of Management and Budget (hereinafter "OMB"); (4) the costs were reasonable; (5) the HHS disallowance was arbitrary, capricious abuse of discretion, or otherwise not in accordance with law; (6) the HHS disallowance was unsupported by substantial evidence; and (7) the HHS disallowance was unwarranted by the facts to the extent that the facts are subject to trial de novo by the court.

The DRC is the State of Kansas's protection and advocacy system for disabled persons. DRC is authorized to investigate abuse and neglect of individuals with disabilities and to provide legal and advocacy representation for these people. It receives program grants from the federal government, and is governed by the cost principles of OMB Circular A-122 in determining whether various expenses are permissible expenditures.

Following an investigation, on January 9, 2004, the HHS Office of Inspector General issued an audit report recommending disallowing $355,997 in program grant funds to DRC resulting from DRC's payment of consulting and legal fees to DRC board members from October 1, 1995 through September 30, 2002. The audit found the costs were expended contrary to paragraph 39 of Attachment B of OMB Circular A-122 and were not reasonable. Attachment B, Paragraph 39 provides, in pertinent part:

> a. Costs of professional and consultant services rendered by persons who are members of a particular profession or possess a special skill and *who are not officers or employees of the organization*, are allowable, subject to subparagraphs b and c when reasonable in relation to the services rendered and when not contingent upon recovery of the costs from the Federal Government. (emphasis added)

On August 20, 2004, HHS issued a letter to KAPS demanding the reimbursement of $355,997 for unallowable professional service contract payments KAPS made to Ochs. On September 27, 2004, KAPS filed a notice of appeal with the DAB. On March 16, 2005, KAPS filed its initial brief stating that Ochs was a consultant. On April 15, 2005, HHS filed its brief stating that

circular A-122 does not allow consulting fees to officers and employees.   KAPS filed its reply brief on May 31, 2005, stating that the Departmental Grants Administration Manual (hereinafter "DGAM") allows employees to be consultants.  KAPS requested an evidentiary hearing.  On April 30, 2007, the HHS Departmental Appeals Board (hereinafter "DAB") upheld the HHS decision.  The ruling by DAB is the final agency action.

DRC is managed by a volunteer, unpaid board of directors.  As noted above, Ochs served as KAPS board president during the relevant time period.  James Germer, an attorney, was the executive director during that same time.  Germer and Ochs entered into eleven separate contracts relating to Och's services and benefits between March 15, 1996 to December 1, 2001. (Dkt. No. 9-2, pages 85-99).  Ochs was paid with federal protection and advocacy program funds.

A summary of the contracts is as follows:

**March 15, 1996 contract**.  This agreement was signed by Ochs and Germer and was titled "consulting agreement".   It provided, in pertinent part: "[f]or malpractice insurance coverage purposes only, Ochs shall be considered a part-time, salaried attorney. This agreement is not an employment agreement, it is a consulting agreement only.  No management decisions made by Ochs will be binding on the agency."

**March 3, 1997 contract.**  Ochs and Germer also signed this document and it was titled "co-counsel agreement".  It had the following pertinent language: "[a]ny dispute concerning allocation of attorney fees between KAPS and Ochs . . . shall be submitted for resolution to an independent person . . . which person shall act as an arbitrator."

**July 1, 1998 contract.**  The document was signed by Ochs and Germer and it provided, in pertinent part: "[f]or malpractice insurance coverage purposes only, Ochs shall be considered a part-

time, salaried attorney. This agreement is not an employment agreement, it is a consulting agreement only.  No management decisions made by Ochs will be binding on the agency."

**August 21, 1998 contract**.  Ochs and Germer also signed this document and it had the following pertinent language: "[t]his agreement is not an employment agreement, it is a consulting agreement only.  It is therefore agreed . . . that Ochs . . . [will] serve as a litigation consultant for five years from the date of this contract."

**January 1, 2001 and December 1, 2001 contract**.  The documents were signed by Ochs and Germer and were titled "work statement".  They provided, in pertinent part:  "[a]ssist with expert consultation . . .[c]onsult with the Director . . . ."  (Dkt. No. 9-2, pages 85 - 99)

In its third and final brief, KAPS withdrew its request for a hearing on April 13, 2006.  KAPS conceded that it was not seeking estoppel against HHS.  It argued for the first time that Ochs was an employee and not a consultant, contrary to its prior position.  KAPS further claimed that HHS approved the Ochs's contract under Circular A-122 provision concerning prior approval and advance understandings, and that the payments in question were thus allowable.  (Dkt. No. 9-4, pages 69 - 81).

HHS filed its response in May 2006, asserting: (1) KAPS should not be allowed to now argue that Ochs was an employee after first claiming that he was a consultant; (2) the agreements and other employment documents reflect the parties' understanding that Ochs was an independent contractor; (3) Ochs was an officer at the time he was a consultant and did not meet the limited exceptions pursuant to DGAM (relating to current salaried employees); (4) even if Ochs were an employee, he did not meet the exception calling for his work to be outside the scope of his employment from 1996 to March 2, 1998; (5) under the terms of the Grants Policy Directive (hereinafter "GPD") 3.01 which

was applied after March 2, 1998, the only exception is for federal employees, and Ochs was never a federal employee.  (Dkt. No. 9-5, pages 55 - 58).

The standards under the Administrative Procedures Act (hereinafter "APA") require a court to affirm an agency's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The court must evaluate "whether the Administrator based his decision on a consideration of the relevant factors and whether he made a clear error of judgment."  *State v. Shalala*, 42 F.3d 595, 598 (10th Cir. 1994).  "The Administrator's findings of fact are conclusive if supported by substantial evidence."  *Id.* The agency's "interpretation of its own regulations is of controlling weight unless plainly erroneous or inconsistent with the regulation." *Id*.  The court's review is narrow and deferential; it must uphold the agency's actions if the agency has articulated a rational basis for the decision and has considered relevant factors. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43(1983).  The court will affirm if it finds that the agency considered "all relevant factors and articulated a rational connection between the facts found and the choice made." *Action, Inc. v. Donovan*, 789 F.2d 1453, 1457 (10th Cir. 1986).  Judicial review focuses on the administrative record existing before the agency. *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

The DAB affirmed the disallowance on two grounds.  On April 30, 2007, the DAB held that Ochs was a consultant and that the fees and costs paid to Ochs while he was president were unallowable because (1) Circular A-122 expressly provided that consulting fees may only be paid to non-officers and (2) even if Ochs was an employee, the payments to him for legal services did not meet the general reasonable cost requirements of the Circular in that sound business practices and arms length bargaining principles were not observed.  The DAB also rejected the argument that HHS had given prior approval or had an advance understanding approving the payment arrangements. HHS specialist Jacqueline Ezzell,  swore in affidavit on March 15, 2005, that she did not recall any contact with Ragan on this matter, but any policy pronouncements of this type would be provided in writing to the grantee. (Dkt. No. 9-3, page 34 - 35).  No written advance determination agreement supports KAPS's argument, nor are there any other facts which indicate an advance oral understanding between KAPS and ADD.

The DAB determined Ochs's status by examining whether there was sufficient control to establish an employment relationship.  (Dkt. No. 9-2, page 13).  If the principal is entitled to control the "manner and means by which the product is accomplished," the parties have entered into an employment relationship.  *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 323 (1993).

The Ochs/Germer contracts support the finding that KAPS did not possess the ability to control the 'manner and means' by which the legal services would be rendered.  The March 3, 1997 contract agrees to a binding arbitration procedure in the event of a dispute between KAPS and Ochs concerning the allocation of attorney's fees. (Dkt. No. 9-5, page 42).  One would expect an employer having control over the manner and means of an employee's services would retain the authority to determine the allocation of attorney's fees without the employee's approval. The contract delegated

control of significant management decisions to a committee.  (Dkt. No. 9-2, page 90).  KAPS and

Ochs were part of the committee and each had a vote.  (Dkt. No. 9-2, page 90).  An employer does

not routinely seek authority to make management decisions through employee votes.  The contract

appears to provide a contingency premium for successful litigation results.  (Dkt. No. 9-2, page 91).

The contingency aspect of this arrangement suggests that Ochs is making an investment of his time

as a consultant or independent contractor rather than an employee.  Typically in an

employee/employer relationship the hard work of an employee is rewarded at the discretion of the

employer.

Ochs and Germer are both lawyers.  The language they used in the contracts would lead

reasonable minds to conclude that KAPS and Ochs entered into a consulting arrangement and not

an employment arrangement.  On this basis alone, the DAB's finding that Ochs was a consultant is

appropriately supported by the record.  However, there is abundant further evidence supporting this

determination as well.

The October 14, 1998, KAPS board meeting minutes reflect the board considering "whether

two board members have conflicts of interest in being paid consultants by KAPS."  (Dkt. No. 9-4,

pages 27 - 29).  These minutes show the board considered Ochs a litigation consultant per the August

21, 1998, Ochs/Germer contract.  (Dkt. No. 9-3, pages 79 - 81).  Germer said he contacted HHS

employee David Ragan on October 16, 1998, to address the board's concern about a possible conflict

of interest with the contracts.  The December 14, 1998, KAPS board meeting minutes note that "Mr.

Germer reported that he met with David Ragan . . . as instructed by the board at the October 14

meeting.  They met to discuss the propriety of having board members as paid consultants.  Although

Mr. Ragan stated that he does not have authority [to] state [the] ADD position on this matter . . . the

7

[ADD] will not usually get involved in such matter unless federal law or administrative regulations are being violated." (Dkt. No. 9-4, page 31). Ragan stated in an affidavit dated March 23, 2005, that he had recently reviewed the December 14, 1998, KAPS board meeting minutes and they do not completely reflect what was said during his meeting with Germer. (Dkt. No. 9-4, page 59). Ragan said he told Germer that paying board members for consulting would raise a warning flag to auditors, and maintains he did not tell KAPS that board members could be paid as consultants. (Dkt. No. 9-4, page 59).

Whether Ochs was an employee or an independent contractor/consultant is important to the case resolution. The Ochs/Germer contracts explicitly state that Ochs was a consultant, not an employee. The board meeting minutes reflect the board's characterization of Ochs as a consultant and not an employee. (Dkt. No. 9-3, pages 79 - 81). Further, the analysis of the facts supports a finding that Ochs performed the services as an independent contractor. KAPS did not withhold any federal income tax from Ochs's compensation, which is typical for an independent contractor.

The KAPS by-laws prohibit an employee from simultaneously serving on the board and as president. (Dkt. No. 9-2, page 103; Dkt. No. 9-3, pages 6 - 7). KAPS and Ochs were free to structure Ochs's employment as an employee or as an independent contractor. The employee approach would have required Ochs to give up his place on the board. The independent contractor approach permitted Ochs to continue as a voting member of the board. The consequence was the disallowance of the payments to Ochs. The record as a whole amply supports DAB's finding that Ochs was a consultant, not an employee.

Circular A-122 governs HHS in reviewing the allowability of costs incurred by non-profit grantee organizations. *See* 45 C.F.R. § 74.27. It provides a uniform set of principles for determining

8

the reasonableness of costs paid with federal grants.  49 Fed. Reg. No. 18260-01 (January 24, 1983).

In determining reasonableness, it states that consideration shall be given to "[t]he restraints or

requirements imposed by such factors as generally accepted sound business practices, arms length

bargaining, [f]ederal and [s]tate laws and regulations and terms and conditions of the award."

Circular A-122, Attachment A, A.3 and A.3.b.  The grantee has the burden of establishing the

allowability of the costs.  *Nisqually Indian Tribe*, DAB No. 1210 (1990), 1990 WL 600222 (H.H.S).

One well-recognized measure of reasonableness in cases of this type is objective evidence

that similar services from other qualified providers could be obtained only at approximately the same

cost.  *Health Pro., Inc.*, DAB Decision No. 574 (1984), 1984 WL 250077 (H.H.S.) (amount of the

payment was not shown to be objectively reasonable for lack of any evidence of what other

organizations paid for similar services).  When determining the arms-length nature of a transaction

and the reasonableness of the payment for services, the role played by the service provider in the

grantee's consideration of a service contract and the influence exerted in connection with the

grantee's approval of the contract is also relevant.  *All Indian Pueblo Council, Inc.*, DAB No. 976

(1988), 1988 WL 486051 (H.H.S) (the chairman of the grantee council participated in a council

board meeting urging the approval of his consulting agreement).

In this case, one director stated  the KAPS board knew neither that the executive director had

contracted on  KAPS's behalf with Ochs nor the details of the contracts**.**  (Dkt. No. 9-3, page 80).

The record contains no evidence the KAPS board knew of a contract with Ochs prior to October

1998.  KAPS board meeting minutes show that Ochs participated in the deliberations regarding the

continuation of his contract.  (Dkt. No. 9-3, pages 79 - 81).  The record does not reflect that

competitive bids or proposals were sought from other lawyers outside of KAPS.  The record contains

no evidence of any objective measure that services of other qualified providers were available only at approximately the same rate of compensation paid Ochs.

The DAB did not find the by-law issue was an independent basis for the disallowance; however, it did discuss the fact that KAPS's by-laws prohibited payments to Ochs while he was a director and that established further evidence that KAPS failed to follow sound business practices. The court finds that is the only reasonable interpretation of KAPS's by-laws and the record supports the DAB's position.

The record supports the finding that Ochs performed his work for KAPS as an independent contractor under a consulting agreement; payments to him thus are improper. Substantial evidence exists to support the Administrator's finding that the disallowance was appropriate. The agency did not act arbitrarily and capriciously. Neither did it abuse its discretion or otherwise act other than in accordance with law.

For all the reasons stated above, defendant's decision is affirmed.

IT IS SO ORDERED this 18th day of February, 2009.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

10